IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 13-cv-1427-WJM

ULYSSES BARNES,

      Plaintiff,

v.

CAROLYN W. COLVIN, acting Commissioner of Social Security,

      Defendant.

---

## ORDER AFFIRMING ALJ'S DENIAL OF BENEFITS

---

    This social security benefits appeal is before the Court under 42 U.S.C. § 405(g). Plaintiff Ulysses Barnes ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits and supplemental security income.  The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act").  This appeal followed.

    For the reasons set forth below, the ALJ's decision denying Plaintiff's application for Social Security disability benefits is AFFIRMED.

## I.  BACKGROUND

    Plaintiff Ulysses Barnes was born on December 12, 1952 and was 56 years old on the alleged disability onset date.  (Admin. Record ("R.") (ECF No. 15) at 191.) Plaintiff has a master's degree in human resources and has past relevant work experience as a user support analyst.  (R. 39.)

Plaintiff filed an application for a period of disability and disability insurance benefits on January 8, 2010, alleging that he had been disabled since August 10, 1999 due to injuries resulting from an accident.  (R. 191-201.)  Plaintiff later changed his alleged onset date to July 17, 2009, as he admitted that he continued working for ten years after his accident.  (R. 29.)  Plaintiff's application was initially denied on April 9, 2010.  (*Id*.)

After requesting a hearing, Plaintiff's claims were heard by ALJ Blaine L. Boyens on August 24, 2011.  (R. 29.)  Plaintiff, medical expert Dr. Robert E. Pelc, and vocational expert Pat W. Pauline testified at the administrative hearing.  (*Id*.)  Medical evidence was submitted from the Veteran's Administration, Dr. William Boyd, Dr. Milburn-Westfall, Dr. Boyd, Dr. Carol Ramsey, Dr. Daniel Wright, Dr. Richard Inman, and Dr. Stephanie Knudson.  (R. 34-38.)

On September 8, 2011, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1]  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 19, 2009.  (R. 29.)  At step two, he found that Plaintiff suffered from the following severe impairments: degenerative joint disease of the lumbar spine with mild scoliosis, degenerative disc disease of the cervical spine, bilateral pes planus, mild left knee strain and possible

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

chondromalacia, affective disorder, and anxiety disorder.  (*Id.*)  The ALJ found that

Plaintiff's hip pain was not medically determinable.  (R. 32)  At step three, the ALJ

found that these impairments, while severe, did not meet or medically equal any of the

impairments or combination of impairments listed in the social security regulations.  (*Id.*)

The ALJ assessed Plaintiff's residual functional capacity ("RFC"), finding that he had

the RFC to perform "exertional lifting limitation of 50 lbs. occasionally and 25 lbs.

frequently; standing and/or walking for 6 hours total during an 8-hour workday.  The

claimant is capable of work requiring accuracy and attention to detail, can interact and

respond appropriately to supervisors and co-workers so long as such contact is neither

frequent nor prolonged and less public contact in person."  (R. 33-34.)

Given this RFC, at step four the ALJ found that Plaintiff could perform his past

relevant work as a user support analyst, because such work would not require him to

perform activities that were restricted by his RFC.  (R. 39.)  Accordingly, the ALJ found

that Plaintiff was not disabled within the meaning of the Act and therefore was not

entitled to benefits.  (*Id.*)

The Appeals Council denied Plaintiff's request for review on April 11, 2013.  (R.

1.)  Thus, the ALJ's September 8, 2011 decision is the final administrative action for

purposes of review.

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial

evidence in the record as a whole supports the factual findings and whether the correct

legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  ANALYSIS

Plaintiff Ulysses Barnes raises four arguments on appeal: (1) the ALJ erred at step two by finding that there was no medical evidence to support his impairment of back pain; (2) the ALJ's RFC was not supported by substantial evidence because the ALJ erred in weighing the medical evidence; (3) the ALJ improperly discredited Plaintiff's testimony; and (4) the ALJ failed to make the requisite factual findings at step four.  (ECF No. 17.)  The Court will address each of these arguments in turn below.

### A.    Step Two

At step two, the claimant must demonstrate a medically severe impairment that significantly limits the ability to perform basic work activities.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 404.1521(a), 416.920(a)(4)(ii), 416.920(c), 416.921(a).  "Basic work activities" involve "the abilities and aptitudes necessary to do

4

most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).  Although the step two standard

requires only a "*de minimis*" showing of an impairment, the claimant must demonstrate

more than the mere presence of a condition or ailment.  *See Hinkle v. Apfel*, 132 F.3d

1349, 1352 (10th Cir. 1997).  The plaintiff bears the burden at step two and must

furnish supporting evidence.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

At step two, the ALJ found that Plaintiff had the following severe impairments:

degenerative joint disease of the lumbar spine with mild scoliosis, degenerative disc

disease of the cervical spine, bilateral pes planus, mild left knee strain and possible

chondromalacia, affective disorder, and anxiety disorder.  (R. 31.)  Although Plaintiff

had listed hip pain on his application, the ALJ found that "the record does not contain

any medical evidence to support the claimant's hip pain and there is no diagnosis of a

hip disorder.  Thus, the undersigned must conclude that this impairment is not

medically determinable."  (*Id.* at 32.)

Plaintiff contends that the ALJ's assessment of his hip pain was error because it

ignored diagnostic imaging in the record which shows that he has degenerative joint

disease in his sacroiliac joints.  (R. 403.)  The Court acknowledges that such imaging is

in the record, and the ALJ explicitly discusses this imaging in his RFC analysis.  (R. 35.)

This single test, however, does not show that the ALJ's assessment of Plaintiff's hip

pain was error.  Plaintiff cannot point to anywhere in the medical records showing that,

before applying for benefits, he sought or received treatment for hip pain.  Rather,

Plaintiff has been treated repeatedly for low back pain, which can be caused by or

contributed to by degeneration in the lumbar/sacroiliac joint.  *See Cumella v. Colvin*,

936 F. Supp. 2d 1120, 1126 (D.S.C. 2013) (discussing lumbar degenerative disc

disease and noting that it causes "pain that is centered on the lower back, although it can radiate to the hips and legs").  Because the ALJ found that Plaintiff's lumbar degeneration was a severe impairment, it was not error for him to fail to include Plaintiff's hip pain as a separate impairment.  *See Allen v. Barnhart*, 2007 WL 460996, *5 (D. Kan. Jan. 9, 2007) (ALJ did not err in failing to include joint pain as a separate medically determinable impairment where the ALJ had found that hepatitis C, which can cause joint pain, was a severe impairment).

Moreover, were the Court to conclude that the ALJ erred in finding that Plaintiff's hip pain was not medically determinable, such error would be harmless.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("any error here [at Step Two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at Step Two and proceeded to the next step of the evaluation sequence").  The ALJ proceeded beyond the step two analysis and considered all of Plaintiff's impairments, including his degenerative joint disease in the lumbar region, when fashioning Plaintiff's RFC.  In fact, the ALJ specifically discussed the imaging showing degeneration in the sacroiliac joint in the RFC analysis.  (R. 35.) The record does not contain any evidence showing that Plaintiff's hip pain would restrict his ability to work in any manner that is not already affected by his lower back pain. Thus, there is no evidence that would cause the ALJ to have altered his RFC analysis, or made different step four findings, if he had found that Plaintiff's hip pain was medically determinable.  Therefore, the Court finds no reversible error in the ALJ's step two analysis.

**B.    Plaintiff's Credibility**

Plaintiff argues that the ALJ erred in finding that his subjective complaints were not credible.  (ECF No. 17 at 18.)  Specifically, Plaintiff contends that the ALJ mischaracterized evidence and failed to make specific findings regarding Plaintiff's credibility.  (*Id*. at 19-21.)

An ALJ's credibility determinations are generally treated as binding on review. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Therefore, the Court will usually defer to the ALJ on matters involving witness credibility. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  *Hackett*, 395 F.3d at 1173 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).

Having reviewed the record, the Court finds that the ALJ did not incorrectly characterize evidence or fail to link his credibility assessment to substantial evidence in the record.  In fact, the ALJ listed very specific reasons for discrediting Plaintiff's statements concerning the intensity, persistence, and limiting effects of his conditions: (1) Plaintiff's description of his daily activities did not comport with his self-described limitations (R. 36); (2) Plaintiff's treatment was conservative in nature compared with the alleged intensity of his conditions (R. 36-37); (3) Plaintiff did not follow through with recommended treatment (R. 37); and (4) the evidence showed that Plaintiff's physical

impairments existed at the same level of severity prior to the alleged onset date, yet Plaintiff maintained regular employment (*id*.).

Significantly, the ALJ pointed out blatant inconsistencies between the record evidence and Plaintiff's testimony at the hearing.  At the hearing, Plaintiff testified that he did not know why he had lost his job, yet the record is replete with instances in which Plaintiff told his medical providers that he lost his job when he was convicted of felony theft.  (R. 37.)  Plaintiff also testified at the hearing that his medical impairments were so severe that he could not possibly work, yet the medical record shows that Plaintiff has been actively seeking employment and reporting to his medical providers that he could perform certain jobs.  (*Id*.)  Plaintiff's attempt to characterize these inconsistencies as "minor at best" is preposterous.  The ALJ was permitted to rely on these blatant inconsistencies with regard to significant issues when determining whether to credit Plaintiff's subjective complaints of pain.  *See Wall*, 561 F.3d at 1070.

On this record, the Court has little difficulty concluding that the ALJ met his burden of linking his credibility assessment with substantial evidence in the record. Plaintiff has failed to show any reversible error with regard to how the ALJ weighed Plaintiff's testimony.

## C.    Weight of Medical Opinions

Plaintiff argues that the ALJ erred when weighing medical opinions used to formulate his RFC.  (ECF No. 17 at 15-16.)  Specifically, Plaintiff contends that the ALJ ignored medical evidence in the record that is contrary to the RFC, and that he failed to properly defer to opinions from treating physicians.  (*Id*.)

8

The opinion of a treating physician is generally "entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996).  Plaintiff contends that the ALJ should have given greater weight to the restrictions imposed by Drs. Wright and Ingram, based on the fact that they were treating physicians who had access to his entire VA medical file.  (ECF No. 17 at 17.) However, the record shows that Drs. Wright and Inman did not regularly treat Plaintiff's medical conditions; rather, they examined him once for purposes of his disability claim with the Veteran's Administration.  (R. 360-65.)  Notes from each of these doctors specifically state that their evaluations are solely for purposes of the disability process, and that Plaintiff's primary treating physician is Dr. Stephanie Knudson.  (R. 360.) Thus, the ALJ did not err in refusing to evaluate the opinions of Drs. Wright and Inman as those of treating physicians.  *See Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) ("A physician's opinion is therefore not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source.").

Plaintiff also argues that the ALJ improperly ignored Dr. Wright's and Dr. Inman's opinions that Plaintiff was "limited to sedentary work", needed "opportunity to stretch his back", and could lift no more than 10 pounds.  (ECF No. 17 at 16 (citing R. 365).) Because Drs. Wright and Inman were not treating physicians, the ALJ was not required to give these opinions controlling weight.  However, he was required to consider them, as with all medical opinions.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record.").

The record shows that the ALJ considered Dr. Wright's and Dr. Inman's opinions and gave good reasons for giving such opinions little weight.  (R. 38.)  Specifically, the ALJ noted that their residual functional assessments were inconsistent with their examination findings, and also "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported."  (*Id*.)  There is substantial evidence to support each of these bases for discounting the opinions.  Dr. Wright's examination showed that Plaintiff has full strength in all muscle groups, had full range of motion in the spine, and did not have any scoliosis, spasm, tenderness, or trigger points, despite his spinal films confirming degenerative disc disease in the lumbarthoracic and sacroiliac joints.  (R. 363-64.)  Dr. Inman's examination showed full strength in the upper and lower extremities, normal reflexes and sensation, and a negative bilateral straight leg raise.  (R. 357.)  The only evidence which appears to support the ten pound limitation on lifting is Plaintiff's own statement that he cannot lift more than ten pounds.  (*Id*.)  Given the prior discussion regarding Plaintiff's credibility, the Court finds that there is substantial evidence in the record to support the ALJ's weighing of the medical opinions of Drs. Wright and Inman.

Accordingly, the Court finds that the ALJ did not err in his assessment of the medical evidence in the record.  The Court further finds that Plaintiff has failed to show any error in the ALJ's RFC analysis.

## D.    Step Four

Plaintiff argues that the ALJ erred at step four by failing to provide specific findings showing that Plaintiff could return to the physical and mental demands of his

past work.  (ECF No. 17 at 22.)

Social Security Ruling 82-62 requires that the ALJ make findings regarding (1) the claimant's RFC, (2) the physical and mental demands of prior jobs or occupations, and (3) the ability of the claimant to return to the past occupation given his RFC.  *Henrie v. U.S. Dep't of Health & Human Servs.,* 13 F.3d 359, 361 (10th Cir. 1993); Social Security Ruling 82-62, 1982 WL 31386, at *4.  The ALJ's findings as to the physical and mental demands of a prior job need not be specific to the particular position the claimant previously held; rather, these findings may be made as to the position or occupation in general.  *See Purcella v. Colvin*, 2013 WL 3773841, *11 (D. Kan. July 17, 2013).

In this case, at step four, the ALJ found that Plaintiff could perform his past relevant work as a user support analyst because "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity."  (R. 39.)  This finding was based upon the vocational expert's testimony at the hearing that Plaintiff's prior relevant work was classified as a sedentary, skilled position.  (R. 81-85.)  The vocational expert also testified that someone with Plaintiff's RFC could perform the position of a user support analyst.  (R. 84-85.)

The ALJ was permitted to rely on the vocational expert's testimony to make his step four finding that Plaintiff could perform his past relevant work.  *See* 20 C.F.R. § 404.1560(b)(2) (vocational expert may offer evidence concerning demands of claimant's past relevant work).  As such, the Court finds that the ALJ obtained enough information to determine whether Plaintiff could return to his prior relevant work as a user support analyst.  *See Wells*, 727 F.3d at 1075 (the ALJ's duty to make specific

factual findings is dependent on the facts of each case).

The Court notes that Plaintiff was, at all relevant times, considered a person of advanced age.  *See* 20 C.F.R. § 404.1563(e).  Had the ALJ found that Plaintiff could not return to his prior relevant work and proceeded to step five of the sequential analysis, the Plaintiff's age would have been a significant factor in determining whether Plaintiff could perform other jobs in the national economy, as there are restrictions on how much an older claimant can be expected to learn new skills.  *See* 20 C.F.R. § 404.1563(e).  However, the ALJ's analysis in this case ended at step four, with his finding that the Plaintiff could still perform his prior relevant work.  Because the ALJ did not need to consider transferability of skills, the Plaintiff's advanced age was not a relevant factor to the analysis.  *See Leston v. Shalala*, 13 F.3d 405 (10th Cir. 1993) ("The regulations make abundantly clear that vocational factors such as age and transferable skills do not come into play unless and until it is determined that the claimant cannot do past relevant work.");  20 C.F.R. § 404.1560(b)(3) ("If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled.  We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy.").

Therefore, the Court finds that Plaintiff has failed to show that the ALJ committed any reversible error in his step four analysis.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's denial of benefits is

AFFIRMED.


Dated this 1st day of July, 2014.

BY THE COURT:

_____

William J. Martinez
United States District Judge

13